The agreement between ESR and SRH was not intended to, indeed it did not divest ESR, the patentee here of substantial rights in the 236 and the 975. No, the contract anticipates and it's clear from the contract that ESR is at all times to be the party who is to bring the actions and they are to be brought in ESR's name. It's the exclusive right to determine who ESR suits but it is not the exclusive right to bring the action in SRH's name. And there's the caveat in all of those, the clause in with respect to all of those rights is with respect to the company's intellectual property rights and the company is ESR. But it goes on to talk about licensing litigation or enforcement efforts which is again broad sweeping language. It's broad sweeping language, SRH has the right to make decisions with respect to ESR's intellectual property but at all times the parties contemplate under this agreement that the intellectual property belongs to ESR and the ESR has to be a party to the license agreement. But being a party doesn't say anything at least to me about what their rights are. If SRH were to decide, if they were to sit down, have a meeting and SRH said we think we should sue and the acronyms have gotten me befuddled here but ESR should say no, we absolutely don't want you to sue, in fact we're adamant about it, you may not sue. ESR couldn't successfully object, correct? Under the contract, no, but ESR has to be a party to the litigation under the contract. But SRH has a breach of contract action against ESR then. I'm not saying that the fact that ESR is to be a party to this litigation is dispositive but it's relevant to what the parties... But that argument would cover a case in which everything except nominal ownership of the patent was transferred, everything. Excuse me, if you had an assignment and you said every right under this patent is hereby assigned to the purchaser except that the purchaser agrees to name the seller as a party in any litigation, the seller would have no rights under the patent, right? What meaningful consequence flows from being told that you are going to be named as a party in a lawsuit? You're intimately involved in every aspect of the lawsuit, you have the relationship with counsel, the proceeds come to you, you sign the settlement agreements, you sign the license agreements, that's one consequence. But you don't have any rights to second-guess decisions which are made by the other party, correct? In other words, in any kind of litigation, you are a completely passive participant, as I understand this agreement. You can't say no to anything, right? You can say no when you get a breach of contract action with SRH. But that would be true in my hypothetical assignment case as well. That would be, but in this case, this isn't the only indicia of ownership. It is one indicia of ownership. There's a number of other indicias too, and I'm not saying that this in and of itself would be dispositive, but you also have to look to what do the parties intend here? And the parties throughout the contract are talking about ESR sprites. There's nothing in the contract anywhere that says SRH has acquired the ownership in this patent. There's nothing there. In fact, the only thing... Pursuing a little bit what Judge Bryson said, what if SRH initiates the suit with ESR and then a weekend severs ESR as one of its decisions? They just say, well, we've decided to drop one of the parties here to make this easier for the court. Could they do that? Not under this agreement. Why not? They get to make all the decisions, and so they make the decision, okay, we agree. We'll have you part to start the trial, but then we'll sever you out. Okay. The reason they can't do that is because this agreement gives them decisions, the right to make decisions with respect to two things. Action, which is a defined term, capital A, and other actions. And if you look at action, it's talking about the Juniper action, which has now been dismissed, and it's clearly defined as an action to which the company is brought and that the company, ESR, is a party. It also gives SRH rights with respect to other actions, and other actions that are contemplated are those that specifically in the agreement are defined as any enforcement case or action brought by the company in which the company is a party and which resolves the company's claims. So SRH doesn't have a right to resolve an action that rights belong to ESR, the claims belong to ESR. Isn't your basic best argument that the title holder by definition has standing? I think by definition the title holder does. This case is different. Hasn't that issue been decided in previous cases? This case is a little different here. It's different for two reasons. One is we're not talking about a licensee, license, or contract. This is like PROPAT and PROPAT acknowledged that the case is investment contracts. Usually the issue is whether the licensee can sue. What? Usually the issue is whether the licensee can sue. And exactly. That is the second way this is different. So it's different because you've got an investment management contract, not a licensee, license, or contract, and PROPAT says, you know, investment contracts don't fit neatly into this paradigm. But it's also, you're absolutely right, it's also different because this is more like Alfred Mann or the Aspects Eyewear cases where you've got the converse. The issue here is you've got a patent holder and the patent holder is the person that normally has all the rights to sue. I mean, they are the true patentee here. And the question is, did they do something to divest themselves of substantial rights that they have somehow lost what would be otherwise their right to sue? And here there's provision after provision of the contract that shows that the parties didn't intend to divest ESR of those rights. Well, then what do you do with the all substantial rights doctrine? Well, I think you can look at it a couple ways. First of all, the all substantial rights doctrine is a doctrine that came up as a way to look at prudential standing for licensees and exclusive licensees. Well, isn't there a way to deal with whether the licensee could sue? It definitely was. I think it has been applied on the converse from time to time. I'm not sure it fits very well in the converse situation. It goes back to if you look here, if you look instead to ESR, we know at the beginning before this contract, ESR had everything. Okay? Nobody disputes that. This contract comes along. Was it an assignment? Was it something that was intended to divest ESR of its rights? And there are a number of provisions. ESR doesn't really have rights remaining, do they? They couldn't exclude anyone. They couldn't really act in any way on the intellectual property they hold. Well, first of all, they maintain the right to make, use, and sell themselves. Secondly, the whole purpose of the contract. They're a shell. There's nothing there except this, right? They have the right money, which kind of raises questions of is there some effort to escape liability here by doing it this way? I don't see that. Why is this done? Here's why it's done. The whole purpose of the contract is so that ESR could exercise its exclusionary rights. They are a small three-person company. The inventor is the company. They had no money that was needed to exercise their exclusive rights, and they didn't have the expertise. And so they brought SRH in to provide money and to provide the expertise. And that's why the whole purpose of the contract is for ESR to be able to exercise its exclusionary rights. And they gave the management responsibilities to SRH. But they kept ESR have any exclusionary right? Only through SRH, right? SRH is going to make every decision about who, how, when, where, what is excluded. That is absolutely correct. SRH makes the decisions. So you said a minute ago ESR wants to make some decisions in that regard. They have no decisions to make. They've given all those to someone else. They've delegated the ability to make those decisions to SRH, because SRH has the expertise to do that. But ESR still maintains the rights and obligations of the patent holder. They have to fund the litigation. That's their responsibility. They have to pay the maintenance fees. Those are obligations, but I don't see their rights. They have a right to restrict, and it's actually an absolute right. They have the obligation to pay for the lawyers, but not to choose them. They have the obligation to pay for the lawyers, yes. But that is a right and obligation. I can see that's an obligation. I mean, I have an obligation to pay taxes, but I never thought of this as a right. It's a right that goes along with the patent ownership. Well, you're calling it a right. I'm calling it a right. I'm just saying my bill is a right. That's fine. Let me ask you a question. Going back to the hypothetical that I presented to you earlier, suppose that a patentee assigned every right under the patent and every obligation to someone else, but said with one exception, which is I will remain, denominated the patentee. I don't think they have standing in that case. All right. Okay. And the reason would be, even though they are denominated the patentee, that the patentee in that setting has transferred all substantial rights under the patent, and therefore not only has the transferee gained standing, but the patentee has lost it, correct, even though they may be nominally the patentee, right? I think so under your hypothetical, since you're not reserving anything. Okay. So the question here is not so much who's the nominal patentee, but what are the retained rights and how substantial are they? That's true, but the nominal patentee is significant too. It's one thing to look at. But it's not sufficient. It's not sufficient. Okay. And paying maintenance fees, not sufficient, but it's something that you absolutely look to. I think, and I see I'm into my rebuttal now. So let me just say one thing. I think that the transferability is an important thing to look at. And here SRH can't transfer to anyone other than an affiliate or someone whom ESR has chosen unless they get ESR's consent. And that is something that this ESR's ability to consent to that transfer is not restrained by anything with respect to the need to do so unreasonably, not to withhold its consent unreasonably. Now, it's just a question that I was curious about. ESR brought this case in its own name? Yes. In breach of contract? No, ESR brought this case. ESR has the right to bring the cases. I thought that ESR had given up its right to make decisions as to when and whom to sue. SRH said to ESR, this is a good case to bring. Oh, so this was an authorized action by SRH. Okay. That's what I didn't understand. Okay. And I'm into my rebuttal time now. Thank you. Carlos, we'll hear from Mr. Joseph. Good morning. The basic legal point is that as a matter of constitutional standing doctrine, the underlying substantive right cannot be separated from the right to sue because only the holder of the underlying right has a relevant legally cognizable interest for standing purposes. Now, in this case, there are two different ways of looking jurisprudentially at the fact that ESR lacks constitutional standing. The first is the plaintiff, for the reasons already given by the court, clearly transferred all substantial rights to SRH. As a result, SRH is now the effective patentee or assignee with sole and exclusive standing to sue. But why not just retain what Judge Lurie expressed as the simple direct rule? You're the patent owner. You get to bring suit, period. The reason, as this court explained, for example, the Eleanor Mann case, is that, yes, you have technical title to the patent. You have title. But if that's all you have, you don't own any actual property interest in any meaningful sense. The patent right, after all, is the intangible right to exclude others from practicing invention. And if you sell away the intangible right to preclude others from practicing invention, there's no meaningful sense in which you own anything anymore other than the piece of paper on which the title is written. Of course, you have a right to some proceeds from the suit. Right. They have two remaining rights. An economic right. Well, they have the economic right to proceeds, and they arguably have a right to practice the patented invention. This is another way of looking at it, is to say, is either of those a substantial right? If not, then by definition, they lack any substantial rights. Neither of those is a substantial right because, first, the Supreme Court held long ago in the Crown Dye case that the mere economic right to a portion of the proceeds does not confer standing because, again, the right to sue cannot be separated from the underlying control over the underlying substantive right. Well, the proceeds, receipt of proceeds, is just another way of compensating for the sale of the patent. Which is what I was going to say. This Court has then held in a number of decisions, including in Balbo, for example, the nominal title holder retained a right to a portion of the proceeds this Court held. It had transferred all substantial rights precisely because it's not a substantial right. It's just, as Justice Bryson said, a form of deferred compensation. What is the contractual status of the right to transfer, SRH's right to transfer any of its interests in the patent? Sure. Well, first, ESR, the plaintiff here, has no right whatsoever to transfer any of its rights or interests without SRH's approval. So ESR has no right to transfer. SRH has a right to transfer its interests either to an affiliate or to any other entity that acquires the gross proceeds. So SRH then has a fair amount of latitude to transfer its interests. What are the limits on the fair amount of latitude? Let's say a fair amount of latitude means there's some latitude it doesn't have. What are the limits? Well, the reason there's no effective limit, which is when we looked at substances here, is that Altitude, the parent company, created SRH for this purpose. Altitude is definitely free to sell SRH to anybody. So the party that's really behind all this can just transfer this to anybody by selling off SRH. Also, if anyone acquired the gross proceeds, then the rest of it could go with them. But in any event, all that matters here is, the reason that's a collateral consideration that shouldn't really even matter, is that all that matters is control over the one right that comes with the patent, which is the right to exclude others from practicing the invention. This court held in cases like Morrow and Wyeth that the exclusionary right is all that matters, and it has to be a right because it's the only right that's actually conferred by the patent grant. If you don't have the only right in a patent, then by definition, you can't possibly have standing. It's just the holding of those cases. Judge Lurie, we're talking about there's a second right that ESR arguably has here, which is the right to practice the patented invention. That's also not a substantial right for a couple reasons. One is that if my legally protected interest is just in practicing the patented invention, that's not infringed in the least, injured in the least, by other people also practicing. The second, and that's the reason for the non-exclusive licensee case. Non-exclusive license. Exactly. You essentially have a non-exclusive license, which has never been thought to confer standing. Another way of looking at the same point is that, again, the right to practice is not conferred by the patent. An inventor has a natural or common law right to practice the patent, but the only right that comes with the patent is the right to exclude. So rights that don't come with the patent, by definition, can't give rise to a legally protected interest for purposes of enforcing the patent. The problem with abandoning the simple patentee-gets-to-sue rule is we're going to end up splitting hairs over what degree of substantive rights were conveyed by this kind of a contract, and we'll end up having to decide that they get rid of 80% or 82%, and where do we draw the line? I think that this court's cases show that it's not been the case because the question is not just whether rights look substantial in the abstract. What percentage of the rights you have is not what this court's looked to. Especially in its recent cases about all substantial rights, the court's made clear that it's the right to litigation that is dispositive because that's the way that the exclusionary right is actually enforced, and that's the only right at issue. So, for example, in every case where the patent, where the nominal title holder transferred effective substantial control over all litigation and all exclusion, this court has held that only the transferee then has standing. Those are the valuable... See, we could start splitting that right up, too. You have the right to decide when we bring it. You get to decide who the counsel is. Somebody else gets to decide whether we make motions. Somebody else decides. That can get all split up into fine distinctions as well. And in cases where parties do share legitimate substantive control over the right to exclusion, this court has held that they both have Article III standing and should be joined prudentially. So, for example, if I have, say, a non-exclusive licensee or someone I grant exclusionary rights to, but I retain, say, veto authority over litigation or licensing, then we both have real control over exclusion, and therefore we all have Article III standing. This court's cases really have dealt with this. And as I was going to say, so in the cases where all control, not just, say, 80%, but really all meaningful control over exclusionary rights is transferred, speed, plait, and falco, this court has held that's a transfer of all substantial rights. When that is not the case, when the title holder really does retain meaningful control over exercise of any of the exclusionary rights, the court's held there's not been a transfer of all substantial rights. I'm a little confused. It's just as a practical matter of why any of this matters in this case. I mean, I take it, and correct me if I'm wrong about this because it wasn't central to the legal issues here, but I take it that SRH has agreed that it would be willing to join the action, and that, and Ms. Poulos tells us that SRH, in fact, directed ESR to bring the action. What is the difference between what this court case is and what this case would be if it had simply been brought by SRH in its own name without ESR? Yeah, there are three Is this all about timing? There are three potential practical consequences, two jurisprudential, and one sort of real world in this case. In this case, SRH is fully capable of protecting its own interest by filing its own suit as it's done. Here, SRH filed its suits a little bit after ESR filed its suits, so there's some timing issues involving statute of limitations, which for all may be why they bothered to bring the appeal in the first place. The two important jurisprudential considerations, though, which have already been alluded to, are that first, one of the basic points behind the standing doctrine is that a defendant should not bear any risk of a multiplicity of suits by different rights holders. So, jurisprudentially, if you let ESR go first in its own name, which is what you file a motion to dismiss against, yet we were facing a real risk that the actual rights holder might later file another suit, and that's why it was important to SRH agreed to join, and that problem's gone. Well, except that ESR is the only plaintiff in this action. It's the only party that's ever sought to be a plaintiff in this action, and ESR lacks constitutional standing and therefore has to be dismissed. What SRH can do is file its own action, and it's done that, and it has the right to do that, and that totally protects SRH's interests. Now, the second thing, which I think Chief Judge Rader might have been alluding to, which is a real issue, is it's never a good idea, which was the case, and the jurisdiction you look to at the filing of the suit, it's never a good idea for the party that is absolutely pulling the strings, the puppet master, the controller of everything in litigation, to not be a party to the litigation, because the district court then lacks real authority over the party that's actually making decisions before it, and the party that's really controlling the litigation is not amenable to the court's process, to costs, to fees, sanctions, anything else. And so, in terms of protecting the court's interests, the rights holder should not be lurking in the background, pulling the strings, which is totally what it's been doing here. If I could go through a little bit as to why the purchase agreement here is as clear as appears to be, the purchase agreement here unambiguously confers on SRH, and you've already read it, the quote, exclusive right to initiate, maintain, resolve, and settle litigation, initiate and settle, and everything in between. If that wasn't clear enough, then it was time to specify that SRH may also, quote, make any and all other decisions and take any and all other actions in respect thereto. So SRH clearly has the right to initiate litigation and take any actions it wants. So SRH is perfectly free under the agreement to bring its own suit, which is something you heard about earlier. SRH is clearly capable of bringing its own suit. There are also other provisions in the agreement that contemplate that ESR may also bring suits, which just means that on the face of the agreement, either of them can bring suit, either SRH pursuant to its exclusive right, or ESR pursuant to SRH's express control and direction. And the fact that, as we talked about before, ESR is also required to take all actions to give effect to SRH's decisions. In other words, when SRH tells it to do something, it has to. Just as just yet another indication, this is clearly not a management contract, because now that SRH has acquired the actual rights, ESR is absolutely SRH's agent. ESR, it's ESR that has to do anything that SRH tells it to do, which in substance makes clear that SRH has the rights and is anything but a manager. It's ESR that's now the effective agent. Also, if there is any lingering doubt about that, it would be resolved by the one piece of extrinsic evidence that's actually on the record, which is the deposition testimony of ESR's own First, he testified that SRH now has, quote, an interest in the patents, not a manager, an interest in the patents, and that because of that, ESR, quote, no longer has any right to make any substantive decisions about monetizing the patents, which again, is exactly right. SRH has the interest, and ESR no longer has any substantive control. That just does what he has, excuse me, SRH has the interest, ESR no longer has any substantive control and just has to do SRH tells it to do. Now, you don't need to go to the extrinsic evidence because the agreement, the purchase agreement, not a management agreement, the purchase agreement is so clear, but if you did, the only extrinsic evidence strongly supports our view of the matter. And, oh, the other thing that came up that I should respond to is they suggested that under the purchase agreement, SRH acquired control only over actions against Juniper, either the action or other actions defined as actions against Juniper. That's clearly incorrect because, and this is on page 351 of the Joint Appendix, section 2.3c, which is the key provision we've already been talking about. Oh, it's the JA side again? It's JA 351. Okay. We're looking at paragraph 2.3c, which is the main paragraph we've been talking about the whole time. What it confers, and this is in subparagraph c, starting the second line, purchaser shall have the exclusive right to, and then this is exclusive right over litigation and other things, and then it says including but not limited to in connection with the action or any other action. So, what this defines the exclusive rights over litigation to is to include but not be limited to the actions against Juniper, and that's really only common sense because for SRH, paid a fair amount of money for all of these rights, and the notion that SRH paid all this money and acquired all of these rights only to sue one party would itself be passing strange, and also would itself then give rise under other decisions of this court to a fairly serious standing problem because if you only have the right to sue one party, then it really looks like you don't have the underlying property interest. It would also just specify one thing, which is that, again, in all of this court's standing decisions, it's emphasized that you have to have a right to substance rather than form, and here the substance is certainly clear enough, and in Speedplay, for that reason, the plaintiff did, the title holder in Speedplay retained a right to actually sue, but this court held that it had no substantial rights because it had no actual control over that right. The transferee could easily vitiate that right by simply granting a royalty-free license, so here even if ESR has a right to bring suit under Speedplay, it doesn't because they agree that ESR has absolutely no control over it. Also, if the agreement looks a little, and I think this is clear enough, but I'd also just point out one other thing before I sit down and answer any of the questions, which is that there's another document in the record before you that indicates rather clearly that this agreement was written from the perspective of trying to obfuscate the fact that SRH was taking ownership. I don't think that's necessary to your consideration, but it is relevant, and the place you can find that document is SRH filed a motion for you to file a namicus brief, which you denied because it's really not namicus, and it's reply brief in support of that. It attached a declaration of a woman by the name of Klein in an exhibit after her declaration at the 15th unnumbered page. Sorry, I don't have better for you than that. There's a very clear statement from SRH's principles that what they were trying to do at altitude was to just obscure the fact that they really were taking ownership. I don't think you really need to take that into account, but it's a document before you that should probably resolve any lingering questions you have about what's going on here. At the end of the day, though, SRH, as the actual rights holder, is more than capable of protecting its own interests by filing its own suit. It's actually done that, and as a result, there should be no concern at all with enforcing this Court's all substantial rights and exclusionary rights cases in this case by Mr. Clark. Thank you. Mr. Josper? Two quick points. One is that I did not intend to say that the actions to which SRH agreed to manage were only the action against Juniper. The action is against Juniper. The other actions are everyone else. So if I said that, I certainly didn't mean that or did not want to imply that. Secondly, the point that my opponent just raised about the document that is in the record, that is not the way that document should be interpreted. That is not correct. The document they're referring to was simply the concern about having people discover the structure of altitude capital, some of the structure of some of the entities itself are indeed proprietary, and they would prefer not to have those structures dealt with. It had nothing to do with disclosing the fact that SRH was indeed someone who had entered into an investment and management agreement with DSR. That's clearly not something that we have fought not to put out in the open. It's out there. It's part of the record here in this case. A couple other, I have 13 seconds. I think what I want to say is that there are lots and lots of different things that ESR got here. It is not like your hypothetical. They got the right to proceeds. They have the restriction on transferability. They have a number of other rights. Thank you, Ms. Polish. Our next case this morning is Webster